IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYNTHES (U.S.A.), | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) Civil Action No. |
| SYNTEC SCIENTIFIC CORPORATION, | ) |
| DIVERSE SURGICAL SUPPLIES INC., and | ) |
| SYNTEC-DSS, | ) |
|  | ) |
| Defendants. | ) |

Plaintiff, Synthes (U.S.A.), for its Complaint herein alleges as follows:

## NATURE OF ACTION

1. This action is for (i) infringement of federally registered trademarks in violation of Section 32 of the United States Trademark Act, 15 U.S.C. § 1114; (ii) false advertising, and the use of false designations of origin and false representations, and unfair competition in violation of Section 43(a) of the United States Trademark Act, 15 U.S.C. § 1125(a); (iii) federal dilution in violation of Section 43(a) of the United States Trademark Act, 15 U.S.C. § 1125(c); and (iv) related claims of common law trademark infringement and unfair competition, deceptive trade practices, and injury to business reputation and dilution under Delaware law.

## THE PARTIES

2. Plaintiff, Synthes (U.S.A.) ("Synthes"), is a general partnership organized under the laws of the State of Pennsylvania, composed of SYTH, Inc., a Delaware corporation, and Synthes North America, Inc., a Delaware corporation, with its principal place of business located at 1302 Wrights Lane East, West Chester, Pennsylvania 19380.

3. Upon information and belief, Defendant, Syntec Scientific Corporation ("Syntec") is a Taiwanese corporation with its principal place of business located at 2 Kung San Road, Chuan Shing Industrial Zone, Shen Kang, Chang Hua, 509, Taiwan.

4. Upon information and belief, Defendant, Diverse Surgical Supplies, Inc. ("DSS"), is a California corporation with its principal place of business located at 7033 N. Fresno Street, Suite 202, Fresno, California 93720.

5. Upon information and belief, Defendant, Syntec-DSS, is a California corporation with its principal place of business located at 7033 N. Fresno Street, Suite 202, Fresno, California 93720.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338(a) and (b), and 1367 as it involves substantial claims arising under the United States Trademark Act together with related claims under Delaware law. This Court further has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and (2) as it involves citizens of different states and of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Upon information and belief, defendants regularly conduct and solicit business, and are doing business within the State of Delaware and within this judicial district, have sold, offered for sale and/or marketed their products within the State of Delaware, have contracted to supply their products within the State of Delaware, and have committed tortious acts within the State of Delaware which acts are the subject of or are otherwise related to the allegations set forth in this Complaint. The defendants have committed, and are continuing to commit the infringing and tortious acts complained of herein within this judicial district, and/or have had

impacts and are continuing to have impacts upon this judicial district. Thus, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## COUNT ONE

## INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS UNDER 15 U.S.C. § 1114

### SYNTHES' TRADEMARKS

8. For over thirty years, and long prior to the acts complained of herein, Synthes has been one of the leading providers in the United States, including Delaware, of a wide variety of medical products, including surgical hardware, appliances and apparatus relating to orthopedic, maxillofacial and spinal surgery. The SYNTHES trade name and trademark is famous in the orthopedics and surgical arena, and SYNTHES products are the number one seller among hospitals, doctors' offices, outpatient clinics and short-stay medical facilities with orthopedic surgical departments. Virtually any kind of facility in the United States and Delaware that conducts orthopedic, maxillofacial and spinal surgery uses SYNTHES brand products. Due to the highest and superior quality of its products, Synthes has a longstanding reputation for excellence in the medical community.

9. The range of SYNTHES brand products is extremely broad. The products range from fixation devices that a doctor or surgeon uses in an outpatient setting, to complex apparatus that are used in major bone reconstruction requiring the services of a major acute care facility. SYNTHES brand products consist of more than 17,000 line items, including screws, plates, rods, clamps; various tools for inserting and securing the implants, such as drills, chucks, wrenches, forceps and nail locking instruments; cases, trays and racks to hold and store the implants and tools; and cleaning instruments and lubricants to ease the insertion of the tools. SYNTHES brand products range from surgical screws and nuts costing under ten dollars, and lubricants and

cleaning instruments, to complete surgical systems for a variety of complex surgical procedures costing upwards of $10,000 for a single surgical procedure.

10.     Synthes markets and sells its products to hospitals, clinics, surgeons and healthcare professionals, short-stay medical facilities, and doctors' offices through an extensive network of sales personnel throughout the United States and in Delaware. As part of its promotional activities, and further heightening the recognition of the SYNTHES brand in the medical industry, Synthes also participates in approximately 50 trade shows a year, which are attended by surgeons, operating staff, nurses and technical staff throughout the country. These include the most well-known and important trade shows in orthopedics, including the trade shows of such organizations as the American Academy of Orthopedic Surgeons, where Synthes sends approximately 30 to 40 staff members, the Orthopedic Trauma Association, the North American Spine Society, and the Scoliosis Research Society.

11.     In recognition of its exclusive and extremely valuable rights and goodwill in the SYNTHES name and mark, the SYNTHES mark has long been registered in the United States Patent and Trademark Office ("USPTO") for various orthopedic and surgical products. Synthes owns U.S. Registration No. 999,397, issued December 10, 1974, for the mark SYNTHES for "instruments and apparatus for surgical, medical, and veterinary purposes solely for bone surgery-namely, instruments and implants for osteosynthesis, including bone screws, bone nails, bone plates and splints; injection needles, and gum plates"; U.S. Registration No. 2,561,835, issued on April 16, 2002, for the mark SYNTHES for "water bath heaters for medical instruments and for contouring biological implants"; and U.S. Registration No. 2,788,064, issued December 2, 2003, for the mark SYNTHES for "chemical preparations used in science for, or in connection with bone implants and implantation, namely, bone cements, pastes, putties and

ceramics and bone growth factors; unprocessed plastics, namely bioresorbable plastics for use in connection with osteosynthesis, musculoskeletal, maxillo-facial, and spine surgery; unprocessed polylactates for use in osteosynthesis, musculoskeletal, maxillofacial, and spine surgery" and "surgical and medical equipment, namely, handheld power drills, bone milling cutters, saw, and locking bolts for medical and surgical purposes and electronic motors for use with the aforementioned equipment; surgical, medical, and veterinary instruments for use in osteosynthesis, musculoskeletal, maxillofacial, and spine surgery, namely, saws and rasps for bones, probes, surgical knives, bone drills, surgical drills, drill guides, aiming guides for directing bone screws and similar devices into bone plates, retractors, chisels, bone forceps, bone clamps, pelvic clamps, internal and external fixators, elevators and impactors; devices for use and insertion during surgery and recovery, namely, intramedullary nails and plugs, bone staples, bone pins, bone clamps, pelvic clamps, angulated plates, compression plates, pedicle screws, pedicle hooks, cerclage wires, disc replacements, spinal rods and plates, artificial bones for surgical implantation, surgical implants comprising artificial non-biodegradable and biodegradable materials, namely, bone cements, bone pastes, and putties, and ceramics, bone substitutes, allograft implants, chips, strips, hip screws; parts of artificial bones for augmenting natural bones; bone graft extenders and bone growth factors all used for bone void fillers and bone regeneration; sterilizing trays for surgical and medical use, trays and cases for surgical and medical instruments and implants; apparatus for classifying and keeping inventory of scientific documentation and surgical and medical instruments and implants, namely, metal medical storage cabinets for storing surgical and medical instruments and implants, featuring a CPU for keeping inventory of surgical and medical instruments and implants". These registrations are valid and subsisting, in full force and effect, and, in the case of U.S. Registration No. 999,397,

incontestable. Synthes is the exclusive owner of these registrations and the trademarks shown therein, and all of the business and goodwill associated with and symbolized by them.

12. Synthes also owns a pending application for the mark SYNTHES PRO, filed December 29, 2004, for "chemical preparations used in connection with bone implants and implantation, namely, bone cements, pastes, putties and ceramics and bone growth factors; unprocessed plastics, namely, bioresorbable plastics for use in connection with osteosynthesis, musculo-skeletal, maxillo-facial, and spine surgery; unprocessed polylactates for use in osteosynthesis, musculo-skeletal, maxillofacial, and spine surgery" and "surgical and medical instruments and implants for bone surgery, namely, instruments and implants for osteosynthesis, musculo-skeletal, maxillofacial, and spine surgery" under U.S. application Serial No. 78/539,602.

13. In addition to its famous SYNTHES marks, Synthes is also the exclusive owner of a number of other trademarks beginning with the prefix "SYN" for products in the orthopedic field, including U.S. Registration No. 2,304,189 for the mark SYNCAGE for "spinal fusion implants"; U.S. Registration No. 2,781,269 for the mark SYNEX for "hydroxyapatite and tricalcium phosphate prepared in a form for use in the manufacture of artificial bones and of parts of artificial bones and for the implantation into natural bone; cements for natural bone; surgical hydraulic cements; surgical autopolymerising cements", and "surgical and bone implants composed of artificial materials and instruments and apparatus for orthopedics and bone surgery, namely, vertibral body implants, artificial bones and parts of artificial bones, bone pins, bone screws and bone plates, angulated plates, compression plates, internal and external distractors, pedicle screws and pedicle hooks, spinal rods and plates, disc replacements, resorbable plates and cages, bone clamps, bone staples, impactors, internal and external fixators,

drill guides, and aiming devices for use in connection with implantation of surgical implants; trays and cases for instruments and implants"; and U.S. Registration No. 2,502,525 for the mark SYNMESH for "spinal fusion implants." These registrations are valid and subsisting, and in full force and effect. Synthes is the exclusive owner of these registrations and the trademarks shown therein, and all of the business and goodwill associated with and symbolized by them.

14. Synthes has also adopted and uses numerous other trademarks for many of its orthopedic products. Since at least as early as August 29, 1973, and long prior to the acts complained of herein, Synthes, by itself and through its predecessors-in-interest, has used the trademark DCP, which has long been registered in the USPTO for surgical implants. Synthes owns U.S. Registration No. 992,827, issued September 10, 1974, for the mark DCP for "surgical implant". This registration is valid and subsisting, in full force and effect, and incontestable. Synthes is the exclusive owner of this registration and the trademark shown therein, and all of the business and goodwill associated with and symbolized by it.

15. Since at least as early as January 1989, and long prior to the acts complained of herein, Synthes has used the trademark LC-DCP, which has long been registered in the USPTO for surgical and medical instruments and apparatus. Synthes owns U.S. Registration No. 2,089,158, issued August 19, 1997, for the mark LC-DCP for "instruments and apparatus for surgical and medical purposes, namely, instruments and implants for osteosynthesis including bone screws, bone plates and instruments for surgically implanting the aforementioned items". This registration is valid and subsisting, in full force and effect, and incontestable. Synthes is the exclusive owner of this registration and the trademark shown therein, and all of the business and goodwill associated with and symbolized by it.

16. Since long prior to the acts of defendants complained of herein, Synthes has extensively promoted the trade name and trademark SYNTHES, and Synthes' DCP and LC-DCP trademarks in connection with its orthopedic products business, such that each of these trademarks has become widely known and recognized by the public and the trade. As a result of Synthes' substantial investment in developing and promoting the SYNTHES brand, as well as its DCP and LC-DCP marks, these trademarks have come to identify and distinguish Synthes' medical products sold under those marks from the marks and products of others, and represent tremendous goodwill of great value belonging exclusively to Synthes. Indeed, the SYNTHES mark, and the DCP and LC-DCP marks are among Synthes' most valuable assets.

### DEFENDANTS' WRONGFUL AND UNLAWFUL USE OF SYNTHES' TRADEMARKS

17. Upon information and belief, and with full knowledge of the SYNTHES name and mark, and the tremendously valuable goodwill that Synthes has built over the years in the medical community, particularly in the area of orthopedics, and long after Synthes' exclusive and continuous use of its SYNTHES name and mark, defendant Syntec adopted the SYNTEC name and mark for use in connection with the manufacture and sale in the United States and in Delaware of goods identical in kind to those that Synthes has sold, and continues to sell under the SYNTHES mark, namely, orthopedic products, including bone plates, screws, implants and related instruments. Syntec's website located at www.syntecscientific.com indicates that "Syntec aspires to be recognized by the medial profession as one of the best Osteosynthesis and Orthopedic Products Company." True and correct copies of pages from this website are attached as Exhibit 1.

18. Upon information and belief, Defendant DSS is a surgical supplies company that consists of four separate divisions, one of which is orthopedics. Upon information and belief, DSS also sells refurbished surgical equipment that, upon information and belief, is of inferior

quality to medical products authorized by and subject to the quality control standards of their manufacturers, including Synthes.

19. Upon information and belief, DSS and Syntec have together created defendant Syntec-DSS, a new international medical device company specializing in the development, manufacturing and marketing of orthopedic surgical implants and instruments. DSS' website located at www.diversesurgical.com indicates that "DSS and Syntec Scientific Corporation have teamed up to manufacture and distribute this new implant line" and that "[w]ith Synthes patent expiration of product formulation and product design, Syntec Scientific Corp. has realized and capitalized on this opportunity." True and correct copies of pages from this website are attached as Exhibit 2.

20. Upon information and belief, and with full knowledge of the SYNTHES name and mark, and the tremendously valuable goodwill that Synthes has built over the years in the medical community, particularly in the area of orthopedics, and long after Synthes' exclusive and continuous use of its SYNTHES name and mark, Syntec and DSS, each individually and jointly through Syntec-DSS, manufacture, market, sell and offer for sale orthopedic products under the designation SYNTEC that are identical in kind to those that Synthes has sold, and continues to sell under the SYNTHES mark. Upon information and belief, defendants' SYNTEC products are marketed, sold and offered for sale throughout the United States, including within the State of Delaware.

21. Upon information and belief, and with full knowledge of Synthes' DCP and LC-DCP marks, and the tremendously valuable goodwill that Synthes has built over the years on product that bear those marks, and long after Synthes' exclusive and continuous use of those marks, Syntec and DSS, each individually and jointly through Syntec-DSS, have adopted, and

are using the marks DCP and LC-DCP on goods identical in kind to those that Synthes has sold under the marks DCP and LC-DCP. Upon information and belief, Syntec and DSS, each individually and jointly through Syntec-DSS, market, sell and offer for sale such products throughout the United States, including within the State of Delaware.

22. Upon information and belief, defendants advertise, promote, offer for sale, and solicit orders for orthopedic products under the name and mark SYNTEC, and the marks DCP and LC-DCP on and through defendants' Internet websites. True and correct copies of pages from defendants' websites are attached as Exhibit 3.

23. Upon information and belief, defendants' SYNTEC, and DCP and LC-DCP orthopedic products are marketed and sold to the same class of customers and end-users, and in the same channels of trade as those SYNTHES, DCP and LC-DCP brand orthopedic products that Synthes has sold and continues to sell.

24. Upon information and belief, despite having actual and constructive notice of Synthes' exclusive rights in its SYNTHES, DCP and LC-DCP trademarks, defendants adopted and have used, and are continuing to use the name and mark SYNTEC, and the marks DCP and LC-DCP on and in connection with products identical to those that Synthes has sold, and continues to sell throughout the United States, including within the State of Delaware. Indeed, upon information and belief, defendants adopted and began to use the SYNTEC name and mark, as well as the DCP and LC-DCP marks for the express purpose of aligning themselves with Synthes, and trading on the fame and goodwill of the SYNTHES name and mark, as well as the goodwill associated with the DCP and LC-DCP marks.

25. Defendants' use and threatened continued use of the name and mark SYNTEC, and the DCP and LC-DCP trademarks are likely to cause consumers and members of the trade to

associate wrongly Synthes with defendants, to believe mistakenly that Synthes is somehow affiliated or connected with defendants, and to confuse defendants and their orthopedic products with Synthes and its orthopedic products.

26. Defendants' use and threatened continued use of the name and mark SYNTEC, and the DCP and LC-DCP trademarks are likely to gain unfair and unlawful acceptance among consumers and members of the trade for defendants' orthopedic products by trading on the reputation, and goodwill that Synthes has built up through its extensive and longstanding use, advertising, and marketing of orthopedic and related products under the SYNTHES, DCP and LC-DCP marks.

27. Defendants' use and threatened continued use of the name and mark SYNTEC, and the DCP and LC-DCP trademarks are likely to cause confusion, to cause mistake, and to deceive as to the source, origin, and sponsorship of defendants' orthopedic products.

28. Defendants' use and threatened continued use of the name and mark SYNTEC, and the DCP and LC-DCP trademarks have caused, and are likely to cause Synthes to lose sales of products bearing those marks, and Synthes' ability to control its reputation and image among the public, as well as the excellent reputation and tremendous goodwill associated with its products.

29. Defendants' use and threatened continued use of the name and mark SYNTEC, and the DCP and LC-DCP trademarks constitutes the use of false designations of origin, false descriptions and representations, as well as false advertising and the passing-off of defendant's orthopedic products as those of Synthes.

30. The aforesaid acts of defendants', jointly and severally, constitute willful and intentional direct and contributory infringement of Synthes' federally registered trademarks in

violation of Section 32 of the United States Trademark Act, 15 U.S.C. § 1114. Further, defendants have intentionally and knowingly induced each other to infringe the SYNTHES, DCP and LC-DCP marks in violation of Section 32 of the United States Trademark Act, 15 U.S.C. § 1114.

31. Defendants' aforesaid acts have caused, and unless restrained by this Court, will continue to cause Synthes great and irreparable injury, for which Synthes has no adequate remedy at law.

## COUNT TWO

### FALSE DESIGNATIONS OF ORIGIN, FALSE REPRESENTATIONS AND FALSE ADVERTISING AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

32. Synthes repeats and realleges, as if fully set forth in this paragraph, the allegations contained in paragraphs 1 through 31 above.

33. Defendants' unauthorized aforesaid acts constitute the willful and intentional use of false designations of origin, false representations and false advertising, and unfair competition in violation of Section 43(a) of the United States Trademark Act, 15 U.S.C. § 1125(a).

34. Defendants' aforesaid acts have caused, and unless restrained by this Court, will continue to cause Synthes great and irreparable injury for which Synthes has no adequate remedy at law.

## COUNT THREE

### FEDERAL DILUTION UNDER 15 U.S.C. § 1125(c)

35. Synthes repeats and realleges, as if fully set forth in this paragraph, the allegations contained in paragraphs 1 through 34 above.

36. Defendants' unauthorized aforesaid acts constitute the willful and intentional dilution of the distinctive quality of, and tremendous goodwill associated with Synthes' famous

SYNTHES trademark in violation of Section 43(c) of the United States Trademark Act, 15 U.S.C. § 1125(c).

37. Upon information and belief, defendants' aforesaid acts have resulted in actual dilution of Synthes' famous SYNTHES trademark.

38. Defendants' aforesaid acts have caused, and unless restrained by this Court, will continue to cause Synthes great and irreparable injury, for which Synthes has no adequate remedy at law.

## COUNT FOUR

### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER DELAWARE LAW

39. Synthes repeats and realleges, as if fully set forth in this paragraph, the allegations contained in paragraphs 1 through 38 above.

40. Defendants' unauthorized acts constitute willful and intentional trademark infringement and unfair competition under the common law of the State of Delaware.

41. Defendants' aforesaid acts have caused, and unless restrained by this Court, will continue to cause Synthes great and irreparable injury, for which Synthes has no adequate remedy at law.

## COUNT FIVE

### DECEPTIVE TRADE PRACTICES UNDER DELAWARE LAW

42. Synthes repeats and realleges, as if fully set forth in this paragraph, the allegations contained in paragraphs 1 through 41 above.

43. Defendants' unauthorized acts constitute deceptive trade practices in violation of the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. §§ 2531 et seq.

44. Defendants' aforesaid acts have caused, and unless restrained by this Court, will continue to cause Synthes great and irreparable injury, for which Synthes has no adequate remedy at law.

## COUNT SIX

### INJURY TO BUSINESS REPUTATION AND DILUTION UNDER DELAWARE LAW

45. Synthes repeats and realleges, as if fully set forth in this paragraph, the allegations contained in paragraphs 1 through 44 above.

46. Defendants' unauthorized acts are likely to injure Synthes' business reputation and dilute the distinctive quality of its SYNTHES trademark in violation of the Delaware Trademark Act, 6 Del. C. § 3313.

47. Defendants' aforesaid acts have caused, and unless restrained by this Court, will continue to cause Synthes great and irreparable injury, for which Synthes has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Synthes prays that the Court:

1. declare, adjudge and decree that defendants' aforesaid acts constitute direct, contributory, and/or inducement of infringement of Synthes' federally registered trademarks in violation of 15 U.S.C. § 1114; the use of false designations of origin, false representations, false advertising and unfair competition in violation of 15 U.S.C. § 1125(a); federal dilution in violation of 15 U.S.C. § 1125(c); trademark infringement and unfair competition in violation of the common law of the State of Delaware; deceptive trade practices in violation of the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. §§ 2531 et seq.; and injury to business reputation and dilution in violation of the Delaware Trademark Act, 6 Del. C. § 3313.

2. grant preliminarily and permanent injunctions restraining defendants, and their officers, directors, agents, servants, employees, attorneys and those persons in active concert or participation or otherwise in privity with them from engaging in further acts constituting direct, contributory, and/or inducement of trademark infringement, the use of false designations of origin, false representations, false advertising and unfair competition, dilution, injury to business reputation and deceptive trade practices.

3. order that defendants file with the Court and serve upon Synthes within thirty days after service upon defendants of this Court's injunction issued in this action, a written report, signed under oath, setting forth in detail the manner in which defendants have complied with such injunction;

4. order that defendants account to Synthes for, and that Synthes be awarded defendants' profits from, sales of its medical products advertised, promoted, marketed, sold, offered for sale or provided under the trademarks SYNTEC, DCP and LC-DCP, together with such increased sum as the Court shall find just and fair in view of the willful and intentional nature of defendants' infringing and tortious acts;

5. award Synthes its damages arising out of defendants' infringing and tortious acts, together with an amount which is three times the amount found as actual damages;

6. award Synthes its costs, disbursements and attorneys' fees incurred in bringing this action;

7. award Synthes punitive damages to the extent permitted by law; and

8.     award Synthes such other and further relief as the Court may deem just and proper.

                              POTTER ANDERSON & CORROON LLP

Of Counsel:                     By: _____

                                    Philip A. Rovner (#3215)

Brian M. Poissant                  Hercules Plaza
Ronald M. Daignault             1313 N. Market Street
JONES DAY                       P.O. Box 951
222 East 41st Street               Wilmington, Delaware 19899-0951
New York, N.Y. 10017-6702     (302) 984-6000
(212) 326-3939                  E-mail: provner@potteranderson.com

Dated: July 20, 2005             Attorneys for Plaintiff Synthes (U.S.A.)